IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LORA J. ORAVEC
    Plaintiff,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

OPINION & ORDER

13-cv-41-wmc

Pursuant to 42 U.S.C. § 405(g), plaintiff Lora Jane Oravec seeks judicial review of a final determination by the Commissioner of Social Security denying her application for Social Security Disability Insurance Benefits and Supplemental Security Income. Oravec contends that remand is warranted because the administrative law judge erred in formulation of the residual functional capacity determination ("RFC") with respect to limitations in concentration, persistence and pace ("CPP"). Because the RFC was deficient, Oravec contends that questions to the vocational expert were similarly deficient. For the reasons set forth below, the case will be remanded for further consideration.

## FACTS

### I. Background

On May 7, 2010, Oravec filed an application for Disability Insurance Benefits ("DIB"). (AR 134.)[1] On June 15, 2011, Oravec also filed an application for supplemental security income. (*Id*.) In both applications, Oravec alleged disability beginning

---

[1] The citations in the Order are drawn from the Administrative Record ("AR"). (Dkt. # 7)

1

September 28, 2009.  (*Id*.)  The claims were denied initially on July 7, 2010, and upon reconsideration on January 19, 2011.

In response, Oravec filed a written request for a hearing on February 1, 2011. (*Id*.)  ALJ Andrew Henningfeld held a hearing on August 10, 2011, and issued his decision denying Oravec's application for Social Security Disability Insurance Benefits and Supplemental Security Income On October 24, 2011.  (AR 131-34.)

Following the ALJ's denial, Oravec requested a review of that decision by the Appeals Council.  On March 23, 2012, the Appeals Council remanded with instructions to the ALJ:  (1) to evaluate the treating source statement of Dr. Dennis Elmergreen, Psy.D.; and (2) conduct any necessary proceedings to determine whether drug addiction and/or alcoholism were contributing factors material to a finding of disability.  (AR 149.)

On September 27, 2012, ALJ John H. Pleuss denied Oravec's application for Social Security Disability Insurance Benefits and Supplemental Security Income.  (AR 19.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Oravec's request for review.  (AR 1-6.)  On January 18, 2013, Oravec filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g).

II.     **Medical History**

Since 2002, Oravec has dealt with a multitude of psychological issues, including bi-polar disorder, mood disorder, depression and suicidal tendencies.  (AR 138.)  Before her alleged onset date, Oravec participated in individual and group therapy.  She had also been prescribed various medications, including anti-depressants, SSRI's, and anti-

psychotics. (*Id*.)  Despite this, Oravec's mental health remained in flux from 2002 through 2006.

On March, 28, 2002, Oravec sought treatment for ongoing depression and suicidal ideation. (AR 485.)  During her evaluation, Oravec stated that she "has been depressed her whole life, but [the depression] . . . worsened since January 2001 with added school pressure, unemployment, worries about her daughter, and adjustment to living in Flagstaff." (*Id*.)  During this 2002 visit, Oravec received a GAF score of 55.[2]

Oravec received mental health treatment through the Guidance Center.  On January 4, 2006, Oravec was admitted to the Guidance Center after telling her therapist that she had plans to asphyxiate herself through carbon monoxide poisoning. (AR 500.)  Upon release five days later, Oravec was diagnosed with polysubstance abuse, as well as "Mixed Personality Disorder with Hysterical Borderline and Depressive Features."  At that time, her GAF score was 65.

On March 16, 2010, Oravec sought treatment from Milwaukee County Mental Health because she was experiencing episodes of anxiety, hysteria and suicidal ideations. (AR 605.)  Her treatment included an increased dosage of Effexor and a prescription for Lamictal, as well as a psychiatric referral.  She was released with a GAF score of 50.

---

[2] A GAF score, short for Global Assessment of Functioning, helps summarize a patient's overall ability to function on a scale of 1-100. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components. On the GAF scale, a score of 45 represents serious symptoms (such as thoughts of suicide, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (such as the inability to make friends or keep a job). *See Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed., American Psychiatric Association 2000).

During her follow up referral, a psychiatrist at Healthcare for the Homeless, Dr. Eleasar San Agustin, noted that Oravec "seems to be irritable and at times teary [and] her mood is depressed." (AR 617.) Dr. San Agustin's also stated that Oravec appeared to be a "moderate" risk for suicide, homicidal and assaultive behaviors. She also noted that Oravec appeared to have chronic suicidal ideations, although Oravec emphatically denied any suicidal plans. (*Id*.) Oravec's GAF score upon release from Healthcare for the Homeless was again 50.

From 2010 to 2011, Dr. Kimberly Steiner, MD, at MCW Froedtert Hospital, oversaw Oravec's medication. After an evaluation, Dr. Steiner reported that Oravec had poor eye contact, was depressed and exhibited poor insight and judgment. Dr. Steiner noted that Oravec demonstrated chronic suicidal ideation, but no intent or plan to follow through with that ideation. (AR 649.) Dr. Steiner also reported that: (a) Oravec's speech was of normal rate, tone, and rhythm; (b) her thought process was logical and goal directed; and (c) her thought content was not delusional, obsessive, or compulsive. (*Id*.) Oravec was again diagnosed with polysubstance dependency, mood disorder, as well as borderline personality. Although Oravec refused individual psychotherapy, Dr. Steiner continued her prescriptions for Lamictal and Depakote. (*Id*.)

Oravec also presented before Dr. Dennis Elmergreen. He provided an opinion on August 25, 2011 that indicated that Oravec was markedly limited in completing a normal workday-workweek; interacting appropriately with supervisors, co-workers and peers; and responding appropriately to changes. Given, however, Dr. Elmergreen had only treated Oravec for one month, the ALJ afforded the opinion "little weight." (AR 31.)

4

In addition to her treating health care providers, Oravec was examined by a state agency psychologist and medical doctor, who found that she would have moderate limitations in daily living, social functioning, and maintaining concentration, persistence or pace. (AR 633.) The state agency psychologist, Deborah Pape, found that the claimant had the following *moderate* limitations:

(a) The ability to understand, remember and carry out detailed instructions;

(b) Maintain attention and concentration for extended periods;

(c) Perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;

(d) Work in coordination with or proximity to others without being distracted by them;

(e) Complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods;

(f) Interact appropriately with the general public;

(g) Accept instructions and respond appropriately to criticism from supervisors;

(h) To get along with coworkers or peers without distracting them or exhibiting behavioral extremes;

(i) Respond appropriately to changes in the work setting; and

(j) To set realistic goals or make plans independently of others

(AR 637-639.) These limitations were afforded "significant" weight by the first ALJ, Andrew Henningfeld.[3] (AR 138.)

Dr. Pape's final conclusion in the Functional Capacity Assessment states that "we find the [claimant] retains the basic mental capacity for unskilled work. She should have

---

[3] ALJ John Pleuss' decision incorporated the prior ALJ's evidential facts, inferences and findings, except as modified or supplemented in his decision. This included limitations (a)-(j), above, and the weight afforded to those limitations.

limited exposure to the general public." (AR 639.) Six months later, Susan Donahoo, Psy.D., affirmed Dr. Pape's opinion. (AR 670.)

### III. Operative ALJ Decision

Following ALJ Andrew Henningfeld's initial finding that Oravec was *not* disabled under the statute, the Appeals Council remanded to another ALJ for further review on the merits. (AR 149-151.) In again denying Oravec's application for Social Security and Disability Insurance Benefits and Supplemental Security Income, ALJ John Pleuss found the following "severe" impairments: mood disorder, depression, bipolar disorder, borderline personality disorder, and polysubstance abuse in remission. (AR 22.)

In considering the Appeals Council's specific instruction to evaluate the treating source statement of Dr. Dennis Elmergreen, Psy.D., ALJ Pleuss noted that "Dr. Elmergreen completed a questionnaire after treating the claimant for only one month, meaning that at that time the doctor did not have a personal, long-term treating relationship with the claimant." (AR 26.) The ALJ ultimately afforded little weight to Dr. Elmergreen's opinion based on Oravec's statements to her subsequent treatment provider that she was "doing fine," along with subsequent treatment notes that documented improvement with medication changes.

In formulating the RFC assessment, Pleuss stated that he was incorporating the facts discussed in the first ALJ decision, except to the extent inconsistent with his own conclusions. Pleuss specifically took into account the claimant's reported subjective memory and cognitive problems, noting "that these complaints generally relate to dealing with change and social interactions." (AR 26.) Pleuss further found no evidence of a

7

cognitive deficit and that the claimant demonstrated her ability to sustain work demands since the alleged onset date.  To account for the claimant's subjective complaints, the ALJ included the following limitation in the RFC:  Oravec "*is likely to be off task for about 5% of the work day in addition to regularly scheduled breaks from work.*" (AR 23.) (emphasis added.)  The other RFC determinations were consistent with the initial ALJ's determination.

Finally, Pleuss determined that based on Oravec's age, education, work experience and residual functional capacity she would be able to perform the following occupations: 3,560 Stocker jobs; 12,350 Laundry Worker jobs; 43,220 Industrial Cleaner jobs; 6,430 Automotive Detailer jobs; and 40,200 Cleaner (lab equipment) jobs.  (AR 28.)  In the alternative, Pleuss found that based on the testimony of the vocational expert and considering the claimant's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that the claimant could perform.  (*Id*.)  Accordingly, Pleuss again found that Oravec was not under a disability as defined in the Social Security Act.  (AR 37.)

## OPINION

### I.   Standard of Review

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).   When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the

evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a federal court reviews an administrative disability determination with deference and will uphold a denial of benefits unless the ALJ's decision is not supported by substantial evidence or is based on an error of law. 42 U.S.C. § 405(g); *see Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Although the court reviews an administrative disability determination with deference, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.; see Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative law judge denies benefits, he or she must build a logical and accurate bridge from the evidence to his conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

In Oravec's appeal to this court, she principally contends that remand is warranted because the ALJ erred in his RFC finding by failing to properly account for her moderate limitations in CPP identified by the medical experts. She further contends that this error, in turn, led the ALJ to formulate an improper hypothetical question for the vocational expert ("VE") by failing to account for her mental deficiencies in CPP.

9

Hypothetical questions posed to the VE "ordinarily must include all limitations supported by medical evidence in the record." *see Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). Here, Oravec asserts that the ALJ failed to explain adequately the basis for his conclusion that Oravec would be off-task 5% of the work day.

When developing the RFC, an ALJ must assess a claimant's RFC "based on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545(a)(1). Examples of the types of evidence are the claimant's medical history, medical signs and laboratory findings, and medical source statements. Moreover, the RFC assessment itself:

> *must include a narrative discussion describing how the evidence supports each conclusion*, citing specific medical facts . . . and nonmedical evidence . . . . [T]he adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also *explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved*.

SSR 96–8p (emphasis added).

In particular, the evidence supporting a conclusion going to a claimant's CPP is critical because it goes to the core of her mental limitations (*i.e.* non-exertional limitations).[4] *See Rapp v. Colvin*, No. 12-CV-353-WMC, 2015 WL 1268327, at *6 (W.D.

---

[4] Ideally, the Commissioner would issue a Social Security Ruling that provides further guidance on the issue of CPP. More specifically, the ruling would address the evidence or factors an ALJ can rely upon in formulating the quantitative and qualitative limitations where severe, moderate or low CPP is concerned and what, if any, "shortcuts" are appropriate -- whether by kind of work, percentage of impact on a claimant's workday or other formulaic benchmarks -- in translating those limitations into a workable RFC.

Wis. Mar. 19, 2015).  Oravec argues that the ALJ failed "to articulate how he arrived at a 5% finding given the vast and extensive mental history exhibited by Oravec." (Dkt. #19 at 4.)  Specifically, Oravec argues that the ALJ "never provide[d] any indication of how 5% is the correct number, as opposed to 10% or 15% or 50%." (*Id.*)  Because he failed to provide any discussion on this issue, Oravec contends that this necessitates remand.

In contrast, the Commissioner argues that "the ALJ's RFC finding was consistent with the ultimate conclusion of state agency psychologist Drs. Pape and Donahoo." (Dkt. #18 at 8.)  Specifically, the Commissioner explains that

> [b]y restricting Oravec to simple, repetitive work, the ALJ effectively limited Oravec to the unskilled work opined by Drs. Pape and Donahoo. Similarly, by restricting Oravec to only occasional contact with the general public, the ALJ accounted for Drs. Pape and Donahoo's recommendation of a limitation of contact with the general public . . . [thus] the ALJ *effectively accounted* for the same moderate limitations used by Drs. Pape and Donahoo to develop their ultimate conclusions.

(*Id.*) (emphasis added.) The Commissioner also purports to justify the ALJ's use of an allowance to be off-task 5% of the workday because it indicates even more deference to Oravec's subjective complaints than called for by Drs. Pape and Donahoo. (*Id.*)

The problem with the Commissioner's argument is that it runs headlong in the Seventh Circuit's decision in *O'Connor-Spinner v. Astrue*, 637 F.3d 614 (7th Cir. 2010). In that case, the Seventh Circuit rejected an ALJ's justification for an RFC formulation that limited the claimant to repetitive tasks with simple instructions to account for moderate limitations in concentration, persistence, or pace.  Obviously, recognizing this

conflict, the Commissioner gamely attempts to distinguish the holding in *O'Connor-Spinner* by framing the 5% allowance and corresponding limitation in workplace changes as *additional* restrictions beyond simple, repetitive work. (*Id*.) In this way the Commissioner argues that the ALJ properly accounted for limitations in CPP. (*Id*. (citing *Muezenberger v. Colvin*, No. 12-C-138, 2013 WL 3305546, at *12 (W.D. Wis. July 1, 2013).)

Of course, this begs the question as to *how* the ALJ arrived at a 5% off-task reduction. Certainly, there is nothing in the evidence to support this quantitative conclusion. Nor does the ALJ attempt to explain how Dr. Pape's qualitative limitations lead to this seemingly arbitrary quantitative limitation. Finally, the ALJ can cite no regulation, law or Social Security Ruling that would support the adoption of a percentage reduction without support in the record.

Indeed, without more, the 5% figure does not even point in favor of Oravec's having moderate limitations in CPP. Rather, the vocational expert could well have understood the evidence to mean that Oravec was capable of working 95% of the time *without* the qualitative limitations otherwise credited in the medical record. While this view is speculative, it presents the precise problem that SSR 96-8p seeks to guard against by requiring the ALJ to include "a narrative discussion describing how the evidence supports each conclusion."[5]

---

[5] By providing a narrative, it also prevents the ALJ from playing doctor and supplying conclusions in the RFC without substantial evidence. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir.1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.")

Thus, the ALJ's failure to comply with SSR 96–8p constitutes error. Indeed, given the ALJ's silence and the minimal record, there is no basis to find that Oravec was any more or less likely to be off-task 5% of the day than 50% of the day. Because of this failure to provide a rationale to support the conclusion drawn in the RFC, the ALJ's decision is not based upon substantial evidence and remand is required. *See* SSR 96–8p.

At least two further reasons fortify this conclusion, both based on earlier Seventh Circuit decisions. *First,* an ALJ must explain his analysis of the evidence with enough detail to permit meaningful appellate review. *See Herron,* 19 F.3d at 333-34; *see also Tapia v. Astrue*, 2012 WL 3100380 *8 (E.D.Wis.July 30, 2012) (case remanded when "the ALJ took no effort to explain why plaintiff would be off task 5% of the time"). To this point, the ALJ simply failed to build the "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

*Second,* and given that remand is warranted for the reasons stated above, the ALJ should assess whether each of the medical limitations in (a)-(j) found by Dr. Pape, and discussed above, should be expressly included in the RFC determination itself and in the hypothetical question posed to the vocational expert. The Seventh Circuit recently has gone to great pains in holding that each of a claimant's specific deficiencies in CPP should be articulated in the RFC determination and hypothetical question(s) posed to the vocational expert. *See Dobrecevich-Voelkel v. Astrue*, No. 09–C–367, 776 F.Supp.2d 878 at *833 (E.D. Wis. March 1, 2011) (ALJ's hypothetical question to vocational expert was

13

inadequate and ALJ improperly discounted claimant's mental health limitations). The inclusion of Dr. Pape's limitations (a) – (f) would seem particularly important given that this opinion was afforded "significant" weight, adopted by the initial ALJ Andrew Henningfeld and incorporated into the second ALJ John Pleuss' decision. (AR 22, 24.)

For example, in *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014, the Seventh Circuit detailed moderate limitations in CPP, identified by the claimant's doctor, in his ability to: "(1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) perform activities within a schedule and maintain regular attendance; (4) perform at a consistent pace and complete a normal workday and workweek; (5) interact appropriately with the general public; (6) get along with coworkers or peers; and (7) maintain socially appropriate behavior." *Id.* at 854. Given these limitations, the Seventh Circuit was "hard-pressed to conclude" that the ALJ's RFC finding was adequate in describing him as an individual who "could perform unskilled tasks, related superficially to small numbers of people, and attend to tasks long enough to complete them." *Id.* at 857-58.[6] Accordingly, the Seventh Circuit remanded for further proceedings, concluding that the ALJ failed to "build an 'accurate and logical bridge' between the evidence of mental impairments and the hypothetical and the mental RFC." *Id.* at 859.

---

[6] Finding that the RFC and questions to the vocational expert were deficient, the court also stated that "the hypothetical [question] does nothing to ensure that the VE eliminated from her responses those positions that would prove too difficult for someone with [the claimant's] depression and psychotic disorder." *See Yurt*, 758 F.3d at 857-58.

Accordingly, on remand, the ALJ should not only explain the basis for the 5% limitation, but why *each* of the limitations ((a)-(j)) are not *expressly* reflected in the RFC determination when Dr. Pape was afforded "significant weight." (AR 138.)

## ORDER

IT IS ORDERED that the decision of defendant Carolyn Colvin, Acting Commissioner of Social Security, denying plaintiff Lora Jane Oravec's application for disability benefits is REVERSED and the case is REMANDED to the commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 29th day of March, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge